IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

Jimmy Lee Nowlin, Jr.                                                                                          Plaintiff

v.                              No. 4:15-CV–488-SWW-JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                                 Defendant

### Instructions for Recommended Disposition

The following recommended disposition was prepared for U.S. District Judge Susan W. Wright. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Jimmy Lee Nowlin, Jr., seeks judicial review of the denial of his second application for disability insurance benefits (DIB).³ Nowlin worked as a plumber for many years.⁴ He stopped working in September 2010, due to problems with breathing. He claims he has been disabled since then, due to a collapsed left diaphragm, chronic obstructive pulmonary disease (COPD), and pain in the right knee and back.⁵

**The Commissioner's decision**. After considering the application, the ALJ identified severe impairments — an elevated left hemidiaphragm, hypertension, COPD, depression, knee pain, atypical chest pain, and fatigue⁶ — and determined Nowlin can do some light work.⁷ Because a vocational expert identified available light work, the ALJ concluded that Nowlin isn't disabled and denied the application.⁸

After the Appeals Council denied review,⁹ the ALJ's decision became the

---

³SSA record at p. 140 (applying on May 2, 2012 and alleging onset on Sept. 1, 2010). *See id*. at p. 165 (indicating first application was denied on October 2, 2011). *See also id*. at pp. 140 & 147.

⁴*Id*. at pp. 169 & 174.

⁵*Id*. at p. 168.

⁶*Id*. at p. 48.

⁷*Id*. at p. 50 (placing limitations on light work).

⁸*Id*. at pp. 53-54.

⁹*Id*. at p. 1.

Commissioner's final decision for the purpose of judicial review.[10] Nowlin filed this case to challenge the decision.[11] This recommendation explains why substantial evidence supports the decision and why the ALJ made no reversible legal error.

**Nowlin's allegations**. Nowlin contends the ALJ: (1) erred in analyzing his medical records, (2) failed to assign appropriate weight to consultative-examiner and treating-physician opinions, (3) ignored the impact of mental impairment, (4) failed to do function-by-function assessment of his ability to work, and (5) identified work exceeding his reasoning ability. For these reasons, he contends substantial evidence does not support the decision.[12]

**Applicable legal principles**. When reviewing a decision denying an application for DIB, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13] For substantial evidence to exist, a

---

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]Docket entry # 15.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial

reasonable mind must accept the evidence as adequate to support the determination that Nowlin can do some light work and that work exists that Nowlin can do.[14]

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[15] The ALJ placed the following limitations on light work:

> (1) occasional stair climbing, balancing, stooping, kneeling, crouching, and crawling;
>
> (2) no ladder climbing, or work hazards like machinery and unprotected heights;
>
> (3) no extreme heat, wetness and/or humidity;
>
> (4) no poor ventilation or exposure to moderate concentrations of dust, fumes, gases, odor, or smoke; and
>
> (5) simple instructions, simple work related decisions, tasks with few variables that can be learned and performed by rote, few work changes, incidental interpersonal contact, and simple, direct, concrete supervision.[16]

A reasonable mind will accept the evidence as adequate to show Nowlin can work within these limitations for the following reasons:

---

evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[14]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (substantial evidence exists if a reasonable mind will accept evidence as adequate to support conclusion).

[15]20 C.F.R. § 404.1567(b).

[16]SSA record at p. 50.

1. **The evidence shows Nowlin can no longer work as a plumber, but can do some light work**. Nowlin had to prove disability with medical evidence; his subjective complaints weren't enough.[17] Nowlin's primary complaint is problems with breathing.[18] Two impairments cause problems with breathing.

The first impairment is a markedly elevated left hemidiaphragm, suggesting paralysis of the left hemidiaphragm.[19] The hemidiaphragm separates the chest cavity from the abdomen; it's the main muscle for respiration. A properly functioning hemidiaphragm moves with respiration, allowing expansion and contraction of the chest as a person breathes in and out. If the hemidiaphragm doesn't move, a person will experience shortness of breath. Medical evidence of an elevated hemidiaphragm supports Nowlin's complaints of shortness of breath.

COPD is the second impairment causing problems with breathing. COPD "refers to two related, progressive diseases of the respiratory system,

---

[17]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. § 404.1529 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

[18]SSA record at pp. 184, 188, 192-93, 204-06 & 276-77.

[19]*Id*. at p. 307.

chronic bronchitis and emphysema."[20] Both diseases are characterized by "persistent difficulty in expelling (exhaling) air from the lungs resulting in loss of lung function."[21] The medical examiner for the first application diagnosed emphysema.[22] Shortness of breath is an early symptom of emphysema.[23]

After the second application, diagnostic testing confirmed the presence of mild COPD. Medical evidence of COPD supports complaints of shortness of breath, but the diagnostic descriptor "mild" suggests no disabling symptoms.

According to the pulmonologist, Nowlin can no longer do his normal work as a plumber, because the required bending, twisting, and getting into small spaces impairs breathing.[24] Nowlin contends the opinion proves disability, but the ALJ properly focused on medical evidence and the ability to do any work. Not all work requires bending, twisting, and getting into small spaces.

By his own report, Nowlin has the lifting capacity needed for light work.[25] His symptoms manifest with postural functions. According to agency medical experts, respiratory impairment limits Nowlin to light work in environments without moderate concentrations of dust and fumes.[26] Medical opinion evidence supports: (1) the determination that Nowlin

---

[20]Harry W. Golden & Tish Davidson, Chronic Obstructive Pulmonary Disease, 2 The Gale Encyclopedia of Med. 1024 (4th ed.).

[21]*Id*.

[22]SSA record at p. 280.

[23]Harry W. Golden & Tish Davidson, Chronic Obstructive Pulmonary Disease, 2 The Gale Encyclopedia of Med. 1026 (4th ed.).

[24]SSA record at pp. 301 & 470.

[25]*Id*. at pp. 209 & 281.

[26]*Id*. at pp. 319 & 354.

cannot work as a plumber — because working as a plumber is heavy work, and (2) the determination that Nowlin can so some light work.

2. **Treatment controls respiratory symptoms**. "An impairment which can be controlled by treatment … is not considered disabling."[27] The nerve damage that caused the paralysis of the left hemidiaphragm can't be reversed, but COPD's respiratory symptoms can be treated. Treatment options include medication, pulmonary rehabilitation, lung transplants, and cessation of smoking.[28] Nowlin's pulmonologist prescribed medication and smoking cessation.

Prescribed medication improved Nowlin's symptoms,[29] but Nowlin did

---

[27]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[28]Harry W. Golden & Tish Davidson, Chronic Obstructive Pulmonary Disease, 2 The Gale Encyclopedia of Med. 1027-28 (4th ed.).

[29]SSA record at pp. 301-02 (Apr. 25, 2012: medication helped to some extent; auscultation is clear with no audible wheezing, bronchial breathing or pleura; no significant crackles; percussion and expansion are within normal range); pp. 341-42 (July 26, 2012: an increase in shortness of breath with heat and humidity; COPD has been stable with no recent infection; auscultation is clear with no audible wheezing, bronchial breathing, or pleural rubs; no significant crackles; percussion and expansion within normal range); p. 452 (Oct. 30, 2012: still complaining about left chest wall pain, but there's no pulmonary cause for pain; his six-minute walk was normal; he could walk over 1000 feet); pp. 449-50 (June 4, 2013: still complaining about left chest wall discomfort although multitude of investigations shows no cause; paralyzed left hemidiaphragm appears stable, no obvious progression; he's still smoking; auscultation is clear with no audible wheezing, bronchial breathing, or pleural rubs; no significant crackles; percussion and expansion within normal range) & pp. 446-47 (July 22, 2013: he's been feeling better, but adversely affected by the heat and humidity; chest pain improved with prescribed medication; auscultation is clear with no audible wheezing, bronchial breathing, or pleural rubs; no significant crackles; percussion and expansion within normal range).

not cease smoking.[30] Because smoking causes COPD and aggravates respiratory symptoms, continuing to smoke indicates Nowlin's symptoms aren't as severe as he claims. A reasonable mind would expect a person with disabling symptoms to comply with medical recommendations.

3. **The ALJ accounted for residual physical symptoms**. In determining a claimant's ability to work, the ALJ should identify the claimant's functional limitations and assess work-related abilities on a function-by-function basis.[31] The ALJ's numerous requirements reflect a function-by-function assessment of Nowlin's ability to work and undermines an argument to the contrary.

Respiratory impairment limits Nowlin, but he will have residual symptoms even if he stops smoking. Allergens and respiratory irritants can aggravate respiratory symptoms. Nowlin says certain odors make it hard to breathe.[32] The ALJ responded by excluding poor ventilation and moderate concentrations of dust, fumes, gases, odor, and smoke.

Treatment records indicate summer heat and humidity aggravate Nowlin's symptoms.[33] The ALJ responded by excluding work involving extreme heat, wetness, and humidity.[34] Bending, twisting, and getting into small spaces impairs Nowlin's breathing.[35] The ALJ limited postural functions like bending and twisting.

---

[30]*Id*. at p. 419 (as of Dec. 13, 2012, smoking 1.5 of cigarettes packs daily and smoking marijuana occasionally).

[31]*Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003).

[32]SSA record at pp. 73 & 205.

[33]*Id*. at pp. 341 & 446.

[34]Harry W. Golden & Tish Davidson, Chronic Obstructive Pulmonary Disease, 2 The Gale Encyclopedia of Med. 1028 (4th ed.) (avoiding respiratory irritants, allergens, temperature extremes can improve function in COPD patients).

[35]SSA record at pp. 301 & 470.

Nowlin injured his right knee before he stopped working.[36] Although knee surgery "dramatically improved" his symptoms,[37] the ALJ accounted for residual symptoms by excluding ladder-climbing and work hazards, and limiting kneeling and crawling.

4. **The ALJ accounted for mental impairment**. Nowlin relies on mental symptoms for judicial review, but when he applied for DIB, he reported no problems with memory, concentration, understanding, following instructions, or getting along with others.[38] His claim focused on problems with breathing.

Untreated respiratory problems ultimately led to the loss of a life-long profession and resulted in depression. Despite decreased physical functioning, the mental diagnostic evaluator opined that Nowlin retains the mental capacity to work as a plumber.[39]

According to an agency mental health expert, Nowlin can do unskilled work involving incidental interpersonal contact, tasks with few variables learned and performed by rote, little required judgment, and simple, direct, concrete supervision.[40] That is the type of work the ALJ required. A reasonable mind will accept the evidence as adequate to support the ALJ's determination.

Nowlin's reliance on the mental examiner's one-time GAF score provides no basis for relief because a clinician's assessment has no direct correlation to the ALJ's determination of disability.[41]

---

[36]*Id*. at p. 397 (18 month before he stopped working, he hurt his knee jumping from a deer stand).

[37]*Id*. at p. 388.

[38]*Id*. at pp. 189 & 209. *See also id*. at p. 246 (uncle's report).

[39]*Id*. at p. 324.

[40]*Id*. at p. 358.

[41]*Jones v. Astrue*, 619 F.3d 963, 974-75 (8th Cir. 2010).

5. **Vocational evidence supports the decision**. After determining Nowlin can no longer work as a plumber — because the job is heavy work — the ALJ questioned a vocational expert about available light work. The vocational expert identified information clerk as a representative job.[42] The availability of a representative job shows work exists that Nowlin can do, regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[43] Because such work exists, Nowlin isn't disabled under social security law.

Nowlin contends working as an information clerk exceeds his mental capacity for reasoning, math development, and language development. No serious argument exists about whether Nowlin can work as an information clerk because he has the mental capacity to work as a plumber. Working as plumber requires the same capacity for reasoning and language development as an information clerk, and exceeds the required capacity for math development.[44]

## Conclusion and Recommended Disposition

The decision reflects a thorough analysis of the evidence. The ALJ properly relied on treatment records and medical opinion evidence in determining Nowlin's ability to work. A reasonable mind will accept the evidence as adequate to support the decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Nowlin's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

---

[42]SSA record at p. 78.

[43]42 U.S.C. § 1382c(a)(3)(B).

[44]Working as a plumber requires reasoning level 4, language development level 3, and math development level 3. Working as an information clerk requires reasoning level 4, language development level 3, and math development level 2.

Dated this 16th day of March, 2016.

_____
United States Magistrate Judge